Thomas A. Buford (admitted *pro hac vice*)
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101-2373
Tel: (206) 292-2110
Fax: (206) 292-2104
*Counsel for Glen Hendren Drive Healthcare LLC
and Vertical Health Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WA3 PROPERTIES RENTON, LLC, *et al*,<br><br>Debtor. | Chapter 11<br><br>Case No. 25-71121 (AST)<br>(Jointly Administered) |

**OBJECTION TO MOTION TO APPROVE STALKING HORSE BID**

Vertical Health Services, LLC, and its subsidiaries, including but not limited to Talbot RD. S I Healthcare, LLC, Southwest 2nd Street Healthcare, LLC, and Bridgeport Way W Healthcare, LLC (collectively "Vertical"), object to approval the Debtors' Motion for the Entry of an Order Under Bankruptcy Code[1] §§ 105 And 363 And Bankruptcy Rules 2002, 6004, And 9004 (the "Motion"). Capitalized terms have the meaning identified in the Motion. This Motion is supported by the Declarations of William Miller and Matthew J. Campos. Vertical objects to the Motion to the extent the Motion requests any relief that impacts the Leases and states:

**A.    Approximately 300 Vulnerable Individuals Reside at the Properties.**

Through the Leases that the Debtors seek to terminate on eight days' notice, Vertical currently provides homes and skilled nursing care to approximately 300 elderly residents. Miller

---

[1] References to Bankruptcy Code herein refer to 11 U.S.C. § 101 *et seq*.

1

Decl. The Motion fails to contemplate, let alone address, what will happen to those individuals if the Leases are terminated. The Debtors' approach is typical of its corporate parent Goldner Capital Management's business model in that it prioritizing private gain with no acknowledgment of the costs or accountability to the facilities' residents. In the skilled nursing business, and this case, all decisions must be made with resident care as the central focus. The Debtors fail to even reference such considerations much less explain how they will be addressed by the Debtors' proposed course of action.

B.  **No Lease Defaults Exist and There is No Bona Fide Dispute as to Vertical's Interest.**

The default notices created and issued by the Debtors are not evidence that defaults have actually occurred. ECF 89-3. Since 2023, Vertical has been remitting the required Lease payments for each of the three facilities directly to the Debtors' senior secured lender MBI, pursuant to the terms of the agreements between the Debtors, MBI, and Vertical. Miller Decl., Exhibit A. Vertical has paid all amounts owing under the leases as evidenced by the fact that *MBI* has not issued any notices of default under Leases. Miller Declaration, Paragraph 4.  The Debtors issued their first default notice over 17 months ago, and have failed to successfully take any legal action thereon. In February 2024, the Debtors sought the appointment of a state court receiver on the basis of the alleged defaults. Campos Decl., Exhibit A. The Washington state court found *no* validity to their arguments and denied the requested relief. *Id.* The Debtors now seek a different decision from this Court on eight days' notice. Even if this were allowed, the Debtors have not put any evidence into the record that the default notices are accurate or that the amounts asserted in the notices are or were ever unpaid. The *only* evidence before the Court on this matter is the Miller Declaration, which confirms that no defaults exist and that MBI has not asserted a default.

The default notices are nothing more than an attempt by the Debtors to extort additional funds from Vertical to which they are not entitled and to attempt to assert rights under § 363(f) to which they are not entitled. While Debtors urge that "[s]imply put, there is an objection to conclude there is an active dispute," the case of *In re Patriot Place, Ltd.*, 486 B.R. 773 (Bankr. W.D. Tex. 2013) specifically holds that a legally ineffective purported notice of termination does not create *bona fide* dispute. *Id.* at 815.

C.  **There is No Legal Basis for the Court to "Deem" the Leases Terminated.**

Bankruptcy Code § 365 provides a debtor with the option to either assume a lease or reject a lease, *not* to terminate such lease. To the extent no legal grounds for termination exist, the Bankruptcy Code provides no basis for the Court to simply "deem" the leases terminated. The Debtors are attempting to perform an eleventh-hour end run around § 365. Even if such an end-run would constitute an equitable exercise of the Court's powers, which it decidedly does not, Section 105(a) cannot be used to circumvent specific provisions of the Bankruptcy Code. *Law v. Siegal*, 871 U.S. 415, 421 (2014) (in exercising § 105(a) powers, "a bankruptcy court may not contravene specific statutory provisions"); *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2nd Cir. 2003) ("[t]his Court has long recognized that "Section 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code'"). Debtors' unsupported request to terminate or deem the Leases terminated should be denied.

D.  **The Debtors do not have standing to address the Leases.**

Even if a default had occurred under the Leases, the Debtors would not have standing to seek termination thereof. The Debtors assigned both the Leases, and any right to terminate such

3

Leases in the event of a default, to MBI pursuant to the deeds of trust granted by the Debtors to MBI (each, a "Deed of Trust"):

> Paragraph 20. Leases and Rents. …This Deed of Trust shall create a perfected, absolute and present assignment of the Leases and the rents, income and profits arising from the Property to the Lender. Notwithstanding the foregoing, **until an Event of Default** shall occur hereunder Grantor is hereby permitted, at its discretion, and is hereby granted a license by Lender, to exercise all rights granted to the landlord under the Leases… The aforementioned license in favor of Grantor… to exercise all other rights granted to the landlord under the Leases shall automatically be deemed to be revoked upon the occurrence of an Event of Default hereunder without further notice to Grantor…
>
> Paragraph 21. Maintain Leases. Grantor shall not materially change. modify, release, waive, terminate or cancel, surrender, alter or amend the Leases…without first securing, on each occasion. the written consent of Lender.

Miller Decl., Exhibit C at §§ 20-21.

Moreover, the continued effectiveness of this assignment by the Debtors was recently confirmed by MBI in proceedings before the Washington state court. Campos Decl., Exhibit A at 46-47. The Debtors lack standing to request a termination of the Leases.

### E.     The Debtors Have Not Satisfied Bankruptcy Code § 363(f).

The Debtors assert that they are entitled to sell the Properties free and clear of liens pursuant to §§ 363(f)(4) and (5) but have failed to meet their burden as to either.

With respect to § 363(f)(4), the only "dispute" is one artificially created by the Debtors. The Debtors cannot credibly deny Vertical's existing leasehold interest in the Properties, having failed to obtain termination within the last 17 months and now asking this Court to "deem" the Leases terminated. Vertical's existing, current leasehold interest is not subject to bona fide dispute.

Next, in a single paragraph, the Debtors assert with absolutely no basis that Vertical could be compelled to accept a monetary satisfaction of its leasehold interest for purposes of § 363(d)(5). To the extent the Debtors rely on law relating to foreclosure and extinguishment of

junior rights, such law is inapplicable here. The Debtors, Vertical, and MBI signed and recorded Subordination, Non-Disturbance, and Attornment Agreements on each of the Lease. *See* Exhibit B to the Miller Declaration. Vertical is entitled to operate the Properties throughout the terms of the Leases. The agreement provides that this right persists even though the Debtors are in default to MBI and persists through a sale, a transfer of the Debtors' interest via foreclosure "*or any other manner.*" *Id.* at ¶ 4. The Debtors cannot sell the Properties free and clear of the Leases.

**F.    Debtors' Have Failed to Meet Their Burden as to Adequate Protection.**

Bankruptcy Code § 363(e) provides that "Notwithstanding any other provision of this section...on request of an entity that has an interest in property…proposed to be used, sold, or leased, by the trustee, the court…shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." *See Precision Indus. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 547-48 (7th Cir. 2002). The Debtors have the burden of proof on the issue of adequate protection pursuant to § 363(p). The Debtors have failed to propose any adequate protection to protect Vertical's interest in the Properties. Under the circumstances present in this case, the only way for Vertical's interests to be adequately protected is through continued possession through the lease term. *See, e.g., In re Spanish Peaks Holdings II,* 872 F.3d 892, 899-900 (9th Cir. 2017) citing *In re Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696 (S.D.N.Y. 2014) (contemplating continued possession as adequate protection to the lessee whose interest is being protected).

//

//

//

For the reasons stated herein, Vertical requests that the Court deny any relief requested in the Motion that impacts the Leases.

Dated: July 13, 2025

By: */s/ Thomas A. Buford*

Thomas A. Buford
Bush Kornfeld LLP
601 Union Street, Suite 5000
Seattle, WA 98101-2373
(206) 292-2110
Email: tbuford@bskd.com
Attorneys for Vertical Health Services, LLC